I rise to second the case of the morning call, 209-737 Oakridge Development Company, Algonquin-Randall LLC, Illinois Family Partnership v. Illinois Property Tax Appeal Board, and Union School District 300. On behalf of the Appalachians, Ms. Sandra Carrick, and on behalf of the Appalachians, Mr. Kevin Siegel, on behalf of the Illinois Property Tax Appeal Board, and Mr. Steve Swofford, on behalf of Community Unit School District number three. Will the Appalachians be splitting its argument? Yes, Your Honor. And you've agreed on time? Yes, we have. All right, thank you. Appalachians, sit. Good morning. This is a case from McHenry County. We represent the owners of the Miller Farm on Randall Road, which appealed its 206 assessment for vacant land zoned only for farm use throughout the entire 06 assessment year. We're asking the court to construe the farm assessment statute to declare that as a matter of law, the activities on this farm qualified the land for an 06 farmland assessment. There are two sentences in the statute which are contested between the parties. The first is to declare the applicable assessment date. Statute says you must be either assessed at a third of value or under the farm assessment statute as of January 1. We believe that that's clear. It needs no interpretation. However, in this case, the practice was that instead of assessing as of January 1, this township was so far behind, they didn't assess until December when they looked back and considered all of the activities during the year. We believe that when the statute says two years, that's what it means. It says specifically, the equalized assessed value of a farm is defined in Section 160 and if used as a farm for the two preceding years. The respondents would have you believe that that actually means three years, just as they think that a random date is just as good as as of January 1. There are about six principles which would keep this court from ruling in favor of the respondents. First of all, if the statute is clear, it does say two years, then there is no cause for a construction where we look to other principles to guide us as to how we might figure out what this means. But the first principle that the court would look to is doubt. If the statute is ambiguous, so you think it might mean three, it might mean two, and you really don't know, then you have a case of doubt and ambiguity. In such a case, if the statute is a tax revenue statute, which this is, it is the duty of the court to rule strongly against the government and in favor of the taxpayer. The taxpayer is given the benefit of the doubt because we know that sometimes tax rules get out of hand, so we do in America read tax laws to favor the taxpayer. And I suggest to you that when the statute itself says two preceding years, you don't have to take a very big step to decide that that's what this taxpayer is entitled to. Now, doesn't it have to be used as a farm in order to have the two years preceding? Yes. So, for instance, in 2006, if it was a shopping plaza, you're not going to say, okay, it was a shopping plaza, but two years before that it was a farm. That wouldn't apply, correct? Correct. What the statute says specifically is that you have to read the definition in a different part of the statute for a farm, which is crop farming. Then it says you have to engage in that activity for the two preceding years. Right. So we're saying as of January 1, the only thing we had to show was that we're at 04 and 05, that what happened after January 1 gets considered the next year, and the Rosewell case will get us into that. The second rule of construction that is very interesting here is that no party may read additional requirements, restrictions, or conditions into a statute in order to understand what it has. And if you read District 300's brief, it has a quotation at page 6, it plainly states that the property must both be a farm in the tax year and used as a farm for the preceding two years. You can read that until midnight, and you won't find those words there. But what we do have is recently a unanimous United States Supreme Court had the occasion to hear a Georgia assessment statute, and the Supreme Court agreed that the statute didn't need any interpretation because it was clear on its face, but the tax authorities wanted to insert another word into it which changed its meaning. Chief Justice John Roberts wrote, We declined to find distinctions in a statute where they do not exist, especially whereas here, these distinctions would thwart the law's operation. Well, here the respondents are inferring words. They want a three-year qualification, but the statute doesn't provide it. According to Chief Justice John Roberts, we cannot add any rule that would enhance a tougher tax policy. It has to go in the other direction. You will notice that the response briefs do not even refer to this U.S. Supreme Court case and to the principle that Chief Justice pointed out. A third principle that must be considered when construing a statute is if a statute can be construed in two different ways so that one would be constitutional and the other would be non-constitutional or unconstitutional, the court must take the variety or the alternate which would be constitutional. And in this case, the second district in another assessment case, Kennedy Brothers v. the Property Tax Appeal Board, already determined that January 1 is the required uniform date for assessment. And if this court decides to go along with the respondents, it will be necessary to overrule the Kennedy case. In the Kennedy case, a land developer qualified for a brand-new assessment classification in September of the tax year. His assessment had not yet been published, so when it was published, they filed an appeal and asked that they be qualified and classified as of September for the rest of the year for that new category. This court said, no, you can't do that. We classify one time every year on January 1 based on what happened the year before, so we're always lagging behind. The court was very explicit that it would be grossly, that it would lack uniformity because some of the taxpayers in the county in various townships were already assessed in June, July, and August, and only because this property was in a more densely populated township, it was assessed later than that. I have a question. Yes. Doesn't the assessor have the power, if the use has changed during the tax year, January to March it's a farm, March to the end of the year, it's an apartment project. Isn't it true that the assessor has the statutory authority to go in and reassess during the tax year from farmland to commercial real estate? Based on the prior year. Based on the prior year. The statute is very clear. There are only two kinds of exceptions for changing a classification or use during the year, and that is for new construction, when new construction is actually occupied, you recess from that date until the end of the year. The opposite is true if a building is destroyed or demolished, that's taken off the roll from that time until the end of the year. The other case where it can occur is if a charitable institution buys a piece of property and converts it to a charitable use, it's taken off the rolls for the last half of the year, which brings us to another principle. There is no other exception stated in the statute, and we quoted in our brief the great old maxim, which is written in Latin, expressio unius exclusio alterius, which was actually recognized by the Illinois Supreme Court in Sherman v. Kranz in the last few years, that if there are specific exceptions stated in the statute, then the statute must be read to absolutely exclude any other alternatives. So when you look at, and the Rosewell case specifically went to that issue, that you have a midyear change for new construction and demolition, I think perhaps what you're talking about, many years ago they could only assess every four years unless there had been some big change, and then that got watered down where they said, well, you could really do it every year if you wanted to, but it's always based on the prior year. If the apartment building was built, let's say, in March, as of the next January, they would have about three-fourths of that year based on an apartment building versus the first three years on something else. So it's always lagging behind. Do you agree that it was not used as a filing in the taxable year 06? That's correct. It was not used. No dispute about that? There's no dispute. There are no buildings. There's nothing. It had no way to generate any money, and it could not be used for anything other than the McHenry County Unincorporated Farms. It was not even in the village. It had no zoning, no annexation, no sewer water roads, et cetera. It was a hunk of land. So, Counsel, so your position is that when the language of the Act says the assessed, and I'm reading it the way you've got it underlined here. Okay. The assessed value of a farm is defined in Section 1-60 and if used as a farm for the two preceding years. So your interpretation of that is 04 and 05. That is correct. But how is it that it's called a farm for 06? Because tax assessments cut off the prior year. If you would look at the Rosewell case, in that case property was changed mid-year and they got into a big controversy over whether they could do it or not. And in Rosewell, the court decided that the status must be determined as of January 1. On January 1, the assessors can look back at the prior year, they can take all of it into consideration, and then they assess January 1. They're not to assess the next activities, the construction that goes on unless it gets occupied until the next January 1. So under 1-60, does it fit the definition of a farm in 06? No, it does not. That's the reason we're here. The statute says two preceding years, and we believe that it means two preceding years. But in addition to having it be a farmland two preceding years, it must fit the definition of a farm under 1-60, no? For the two preceding years. Once for soybeans and once for corn, and all of the decades before that. We're at the point really where I think it's crucial here because it's talking about the assessed value of a farm. Right. What does it mean to be a farm? It has to be crop farmed. And you do it as of January 1 if it was farmed for the last two years. You cannot find another classification. No, I'm with you on that. So you're using, if it was farmed the last, if it's a farm, you get the farm rate as long as it was farmed for the preceding two years. That is correct. But it still has to be a farm as of January 1, 2006. Doesn't it have to fit the definition of a farm under 1-60? No, because you go backwards. You have to look back to the two preceding years. And, for example, if you look at the Pasaga case, which was also a second district case, in that case there was the subdivision assessment law, which allows new construction to have the market-based assessment deferred. The Property Tax Appeal Board didn't want to do it that way, much like here they wanted to hurry up and accelerate taking away the farm use. But the court said that you have to understand what the purpose is for the statute. And there it was very clear. It looked at the history at the General Assembly, and it was clear that they were trying to defer market-based assessments. And it said on farmland and vacant land. That's in that statute, on farmland and vacant land, because it was too heavy a load for developers. And it would actually spur economic development, and it would help the economy in general if they gave a deferral, because it would encourage developers to develop without having to borrow a huge amount of money to support the value. But didn't you have to qualify for special treatment under, I think it was 10-30 under that case? Yes, that's exactly what it was. In that case, it was qualified, because they had already subdivided a farm for development. So how do you qualify for that here? Explain that to me. Because the statute explicitly says two preceding years. The Rosewell case says there are no other classes which are assessed after January 1 except new construction and demolition. Because of the exclusio Latin phrase, you cannot infer any other exception into the statute to look after January 1. You can't do it. Especially here. Remember, these people were assessed in December. Many of the McHenry County assessments were already determined in June, July, and August. What they did is they took a really prime piece and said, we're going to give you extra treatment. This would have been some bum on a little house that would never have happened. But because it was such a prominent piece of land, they went ahead and reassessed it. And from the outset at our hearing, we contended that you must follow the statute. It's not optional. You have to do it. The other thing that I thought would be interesting to you is the Kennedy case, which had declared that the uniformity required a January 1 uniform date. In this case we're here today, you won't get a uniform January 1 date because we have a December date that went backwards. Let me ask you a question. Your position then is that someone is entitled to the farm designation and be taxed as a farm even if it's not used as a farm, as long as it had been used as a farm before that. Right. That's a third-year qualification that the statute does not require. They're saying you have to farm three years to get one year of farm assessment. And that doesn't really make sense if they wanted us to have three. As a matter of fact, the old ag assessment statute used to have three. Now they're down to two. And once you're qualified, you're qualified. But, however, during 06, if they didn't farm, then come January 107, they won't get a farm assessment. But they still will have farmed more years than they get the farm assessment, always. You will always have more years of farming than you can qualify for. And that's what's a little bit unfair about it. Your time is up. Okay. So you can finish it. Well, I'm just going to say that if you are assessed every year in arrears, the effect will be that you will always have more years of farming than you do of being awarded an ag assessment. You'll always be one year short. So in terms of what can we be thinking about, the issue is you already are required to do it for two years. Once you've done it two years, you get one year of pass. You get the year. But if you don't do it, if you skip that year, then you've got to do it two more years. Then you've got four years before you ever get that statute. And that cannot be the intent of the law when the whole purpose, as in Pasadena, was to defer market-based assessments by giving vacant land and farmland a pass. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. I'm Assistant Attorney General Evan Siegel for the Illinois Property Tax Appeal Board. Counsel, good morning. I'm going to split my time this morning with the co-counsel. He's going to talk for about nine minutes about some of the statutory provisions. He's going to talk for another six about uniformity and some of the constitutional questions. Your Honors, there is no principle of statutory construction or statutory interpretation that requires any court to parse a statute that courts have established.  And here there's no ambiguity about how Section 10 and 110 or the farm definition in 160 work. In fact, the taxpayers have conceded that there's no occasion for construction here. There's no need to go into legislative history or discern the intent of the legislature. The requirements are clear. This Court said in 1986 in the DuPage Bank and Trust case that two prior years are required for the farm assessment and the focus is on the present use. That case interpreted the predecessor to 10 years. Let me interrupt. Why did the appellant's almost entire argument focus on statutory construction if she doesn't agree that the statutes are ambiguous or not ambiguous? I don't know the answer to that question. They concede on page 18 of their brief that there's no occasion for statutory construction. Five decisions of the appellate court from 1986 to 2005, including DuPage Trust, have all held that the focus is on the present use. In the DuPage Bank and Trust case, there was no evidence of farming in 1981, which was the tax year in question, and the court held that the Revenue Act contains no exception for fallow lands. That is the state of this property in 2006. They have conceded throughout the record that there was no activity in 2006. I don't understand this notion of going forwards in time or backwards in time. It's impossible for every assessor in the state and the PTAB to make a determination on one day of the year, January 1st, which is the date they focused on. That's not how valuation, which is a separate question than status, or determination of the farmland assessment work. It must be looking backwards. And, indeed, the taxpayers do want to look backwards, but they only want to look back at two prior years, 2004 and 2005. Here, in December of 2006... Does it say what the statute says to look at the two prior years? It does say that, but that's a necessary condition, Your Honor. The sufficient condition is the year in question, as defined by what a farm is in Section 160. All of those descriptions of what farming is, horticulture, raising of agriculture, livestock, that has to do not with what happened two years ago or five years ago or a generation, but what is happening currently on the farmland. And that is what the appellate... Excuse me, Counselor. So suppose there's a land that's not being used as a farm, no question about it, and then in the middle of the year, in June, they plant crops and it becomes unquestionably a farm. Now, as of January 1st, the following year, they're not eligible for... And it's a farm. In January, there's no dispute, it's a farm. They're not eligible, even though they are a farm, for this tax treatment because they haven't been a farm for the preceding two years? Is that right or not? I believe they are eligible for a farm if there's any sort of activity in the assessment year. The appellate court... But what does it mean if it's been used as a farm for the preceding two years? It means that, in Your Honor's hypothetical, in June... I'm saying the farm is not. I'm saying it's a given. If it's not been a farm for the preceding two years, it's definitely a farm now. No qualification under 10110 because there are two parts to that. There must be the two preceding years and the year of assessment. There are two conditions that must be satisfied. But you just answered him that if it were a farm, then you're not going to look at the two preceding years. No, I misunderstood the hypothetical. The assessment year is unquestionably the key, the focus of the assessment question under DuPage, bank and trust, and the other four cases we've cited. But the two preceding years come into play, so it's not... So a farmer can lose this tax advantage in two ways. One is because he's, don't question he's a farm today, but he wasn't a farm for the preceding two years, he doesn't get this tax treatment. And the other hand, if he was a farm for the preceding two years, but he's not a farm now, then he doesn't get the benefit of the tax treatment. And your position is the latter is where we are now. This was a farm for the preceding two years, but it's not a farm now. And it doesn't matter what happened in the preceding two years if it's not a farm now. Correct. Okay, that's your position. Hers is that it's... Okay, I got it. And just responding to a question you raised, Justice Bowman, about a change in use during the year. Let's say that it was farming until June 1st, and then development, real estate development. My understanding is that it would qualify, assuming that there was farming in the two prior years under that scenario, because the farming took place in the assessment year, and the appellate court in the Santa Fe land improvement case dealt with that question of changes in each year. Possible uses don't matter. The intent to farm doesn't matter. It's actual farming. And, again, the court held that the scheme of taxation is based on present use. And what's interesting about... So if we're determining present use, then why do we need that verbiage as a farm for the prior two years? That's part of the legislature's conception of the statute. They have created a three-year scheme, in essence. What you did in the past matters, but what you did in the present is crucial. That's the language of 10.1.10. How do you distinguish the two cases that she was relying on, the Pasega and the Rosewall case? Pasega is utterly irrelevant to this matter at hand. The taxpayers have conceded in their brief, but they've gone back and forth, so I'm not quite clear on their position, that they don't qualify for the real estate developers' aid in 10.30 because they didn't take the steps of plotting the land or subdividing it. They admit that throughout the record. The Algonquin real estate president testified the land was undeveloped before the board. The taxpayers said there was no plot or subdivision. Pasega deals with 10.30 only, and they don't qualify for 10.30 because they didn't take the steps to avail themselves of that protection. They also didn't farm, and they didn't farm on January 1st. Just so I understand your answer, regarding my question, if there's any farming during the taxable year that would qualify for the farm deduction for that year? Yes, I believe that's right. It's a day, a week, or a month? Yes. All right, thanks. And the activity, there's no argument here that they farmed in 06, though, right? I'm sorry? There's no argument that they did farm it in 06. They say they didn't. There's no argument that they did not farm it in 06. If I recall the facts correctly, though, there was some statement that there was some preparation done. Weed killing or something like that? Mm-hmm. But that happened in 06. Right, and we submit that would be an intent to farm, not a substantial step towards farming. Well, it doesn't make any sense because they're not claiming that as farming. Right. Yeah. That's right. So I understand, though, so there was some idea, whatever you want to phrase it, anticipating farming by killing weeds, but then they changed their minds, and what happened next there on the land? They decided not to farm. Because they started breaking ground for something else? No, they didn't break ground. They didn't plot. They waited throughout the year. The land was fallow, and they closed this contract for sale 13 months after they went to contract in December of 06, approximately. So you said that Procedure is distinguished because they don't qualify for the 1030 exemption? Correct. Correct. And Procedure has nothing to do with 1010. I think the other case you were asking about was Rosewall-Kennedy. I didn't brief either of those. I believe they have to do with valuation or classification, which is a completely distinct question. Then the status of the property, that's all we're concerned about in this case, not the valuation, which is a dollar determination. 1030 doesn't apply either. So I believe I'm running up on my time. Sorry. If there are any other questions, we haven't read any word into—we haven't read a word that didn't exist into the statute. What the taxpayers have done is erased the central concept of present use in the current assessment year. They don't qualify. Well, just to follow up on Justice Bowman's question, after they killed these weeds, if they had put in some kind of seeds and then never even bothered to pick the crops, they would have been all right. Yes. There has to be farming. And I believe that some of the cases we've cited, like Kankakee and Santa Fe— No, I was going to ask— —in Auburn County talk about what farming actually is. As defined in 160. Okay. Thank you, Your Honor. Good morning, Your Honor. My name is Steve Swofford. I'm on behalf of the school district number 300. I'm just going to talk a little bit about uniformity in case there's any questions. I know counsel, when she was up here, challenged whether we were doing things in a uniform way because there wasn't a uniform date of January 1 of every year to value property. And I beg to differ on that. The evaluation of this property, and the record shows it in the minutes of the Board of Review, is that this property was valued as a farm—not as a farm, excuse me, not as a farm—based on January 1 of 2006 and based on the sales of comparable property during the prior year. So there's really no uniformity problem in this case at all. And there's no due process problem for this same reason. You said it was determined and designated to be not a farm as of January 1. Correct. What's that got to do with comparable sales? I'm missing something. Then you said— Okay. The— What does it have to do with valuation? I'm sorry? What does it have to do with valuation? I'm talking factually—I'm sorry. Factually, in this record, you will see in the Board of Review minutes that the assessor here, after determining that this was not a farm in 2006, went back and looked at the sales of other vacant non-farm land in Algonquin. And that is the way that she determined, or he determined, the value of this particular piece of property. The value is not an issue. And so it's— We just tried to show uniformity. There's uniformity here. Factually, there's uniformity here. There's no issue about uniformity here. And that's the only reason, really, I brought the subject up. Okay? And the burden was on the taxpayer to show otherwise, that we didn't do things uniformly with respect to all the other property in Algonquin. All right. Excuse me, counsel. The decision is made as of January 1st, this is not a farm. That decision is made when? Later on, right? That—yes, a practical matter. It was made later on, based on—well, the statute allows the assessor to go out, I believe, up through June of this year. It was also based on an affidavit filed by the taxpayer saying—in which she checked it was a farm in 2000—or representative of the taxpayer. It was a farm in 2004. It was a farm in 2005. But it's not a farm in 2006. All right. Hold on. Did a representative of the taxpayers file a document with the tax— An affidavit with the assessor. Like I said, this is not a farm as of 2006. Yeah, they checked the box that it wasn't being a farm in 2006. Okay. So when the assessor makes the—when whoever makes the determination whether something's a farm as of 2006, they may make that determination up until June. They go back—it's now June. They're making the decision of what the status of this was six months ago. That's how they do it. That's correct. They're making the— I'm sorry. I'm sorry. They are making the decision as of what it—yeah, what it was in the beginning of the year. Well, here, there's no dispute it was the whole year it wasn't farmed. Perfect. So when they do this, then, when a decision is made in June as to the status of something in January, do they look at what happened between January and June to make that determination? If the property had been farmed between January and June, they would have qualified for the—under the statute. I mean, that's the way I can answer this, yes. They have to look. Yes, they have to look. What if the property were farmed after June? Your counsel seems to indicate if it was farmed at any point during the year, it would qualify as farmed. Well, although it's hard to fit this into the statutory scheme of looking at the property through June, I think it's—our side of the case agrees that if it's farmed at any time during 2006, and it wasn't used for any other purpose, the fact that it would be farmed, yeah. Was this property, in this case, used to farm at any time in 2006? No, it wasn't, because, I mean, it's true, they put down herbicides and whatnot, but they never grew a crop. They never planted a crop. And they signed an affidavit saying that it wasn't used as a farm in 2006. So that's pretty much—if you look at the position of the statute, which I think, you know, it has to be a farm in 2006, plus being farmed the two prior years, there's really no factual dispute in this case. So we'd ask that the decision of the property tax to be abhorrently affirmed. Any other questions? Thank you. Rebuttal. I'd like to address the uniformity issue first. There are two different uniformities, and we're speaking like this. Our contention is that all property must be assessed as of January 1 under the Kennedy case in order to uphold uniformity. Mr. Siegel said, well, you just look at that day. No, you don't. You look at the whole prior year. And then as of January 1, you pick up all of those activities. What the school's lawyer is talking about is purportedly we got a market-based assessment that we can't complain about. We already know we got a market-based assessment, and that's why we're here. We're not saying that we didn't get a uniform assessment because we were worth more or less than other people. That's completely irrelevant to this case. This case is not uniform under the Kennedy case because we were assessed in December based on every single thing that happened through the rest of the year. The other thing that I wanted to address is the Besika case is relevant because it's a second district case where you look at why farmland and vacant land are intended to not have market-based assessments. So there are only two. I guess there's also open space. But there are very few categories that the legislature sees fit. The other thing that's interesting here, the General Assembly is charged with writing the statutes. The PTAB doesn't like Kennedy. They don't like Besika. They don't like this case. So they just do it their way. That's not what we're here to do. We're here to figure out what the General Assembly does and to follow it. The other thing that I think is significant, and I intended to say it in my first round, there are five cases they refer to that are, quote, based on present use. I will show you that every one of those speaks to a completely different issue. The first case is Santa Fe, where several hundred acres have been farmed for years and years and years. Then it was zoned for an industrial park. The assessor went in and rezoned it to a much higher assessment, but the farming continued. The court finally determined that you could not speculate on that future industrial use. You could not charge for that zone because it hadn't happened yet. Now, just remember, in our case, we don't have any zoning. Santa Fe was already zoned for an industrial park, and they were given a farm classification because they had not yet converted. And that was constitutional. But also because they were farming. That is correct. And you guys weren't. That is correct. But you have to, again, what does the statute say? You can't try to superimpose some restriction that isn't there. You have to take it the way that it's written. It's not a prerogative. And as I put in my brief, my firm has handled other assessments before local boards that were decided exactly the opposite, that it does qualify if you have two years. The other case that they relied on that I actually handled is the DuPage Bank and Trust case. Only before the local board of review was that a farm classification case. We did not do that on the further appeals because we couldn't meet it. All they had done, they had intermittently farmed for several years, but it was never the precise sequence that we needed. So they had years of farming, but they were sort of in and out of it. And when we went to the appellate court and the property tax appeal board, we were claiming that we had a 2,600% higher assessment than other farms, and, therefore, we were not being uniformly treated. The court did not accept that argument, but it had nothing to do with a farm classification. The other case that was talked about here was Bond County, where land had actually been subdivided for residential use, but the farming continued. The court would not allow the residential use. This future use that we can't see and can't hear was already subdivided for it. You can't assess for that. You have to assess for the farm use. And the basis behind that in that case was in order to not discourage developers, correct? That's exactly right. And if you look at the Passika case, Dennis Hastert was still in the state legislature. He says we have to have some protection here for these farmers and developers. They cannot pay market-based assessments, so we're going to do the subdivision law, the farm assessment law, and the open space so that we can pass some of these until they can generate the money that it takes to develop. And I ask you to consider if you had a piece of land zoned only for agriculture use, it has no infrastructure at all, do you think a $3 million assessment would be confiscatory of your asset? And I submit to you, I put it in a brief, we think it is. How are you ever going to generate? If the Millers still owned this, they would be on bankruptcy's door. I mean, you cannot have vacant land and expect to have any sort of a civil society that honors property rights if you're going to say the government wants a $3 million assessment. Literally, when people got the notice, they almost had a heart attack. I mean, it was just, it's ridiculous. It is so far afield from anything. And this is the real world. This is the real thing that's going on here. We have to deal with the facts in this case. Somebody got way out of joint, I think. The Kankakee case was another that talked about the present use, where a five-acre parcel had three acres farmed and then people were living in their home on the two-acre. The assessor tried to take away the ag assessment and the court ruled that you could divide it so that the three acres gets it and the two acres does not. One quick summary here. I think your position is that, let me see if I, I'm trying to figure out what you're arguing on statutory scheming. The first year a farm comes into existence, it's not eligible for this tax treatment. That is correct. The second year, it's not eligible. That is correct. The third year, it is. Yes. And then if it stops being a farm, your point is it's equitable to allow it to continue to get this tax benefit because looking back the first two years, it didn't get it? No, because that's what the statute says. It says that you have no way to qualify, and it's how you fail to be paid. We have all sorts of a jagged schedule here, farming and not farming. If you farm the first two years and you get no farm assessment, you don't qualify for it until the next January 1st. So when January 1st comes, you're qualified. It depends on the activities of the last two years. I'm trying to justify the idea that some place can be – you're saying this is confiscatory because this is fallow, vacant land, and they've got a $3 million assessment. Right. What if it was a 30-story building generating a huge amount of revenue? Well, realistically, you wouldn't have a case like that because you can't convert from farming overnight. You could convert from farming overnight to something. Right. An oil well. An oil well. An oil well. Again, whatever happened the preceding year, the assessors are supposed to pick that up uniformly January 1 that applies to everybody. Okay, so the point is if there is some profitable venture going on in the land other than farming, there are still going to be taxes. That's correct. And the other thing, to just follow your point, bear in mind that let's say in 06 we didn't farm. In 07, if we farmed again, we then have three years. By 08, we still can't get a farm assessment. We will have done it for three years. I was trying to justify the idea of allowing something other than a farm that's really much more valuable than a farm to get that. And the justification would be because they had to earn that a couple of years earlier when they were not getting the benefit in all they were doing was farming. Well, I think there's actually – there are mineral exceptions. I've done some gravel mining. I don't know oil wells. But typically, for gravel, you pay for the mineral plus you pay for the farm. If you have mineral reserves, you're typically charged for those. But you can – so you get one bill for that and you get another bill for farming. I can't speak to oil wells, but gravel, I know, gravel. Can you find one in McKinley County, by the way? We've done a few. Oil wells, of course. As a matter of fact, the case that we had that was directly opposite to this was a gravel mine started in April. So the assessor ran out and gave this gravel mining assessment. We proved it had been farmed for 50 years preceding. They said, you're right, it's two years. Come on. Thank you. Accounting for the record argument was well done. Case is taken under recess. Court is adjourned.